UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRAVIS HARRIS,

        Plaintiff,                                  Hon. Wendell A. Miles

v.                                                 Case No. 1:06-CV-285

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

        The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 32 years of age at the time of the ALJ's decision. (Tr. 17). He successfully completed high school and a one-year course of study at a corrections academy. (Tr. 17, 92). Plaintiff worked previously as a corrections officer, security guard, material handler, sawmill worker, and a maintenance worker. (Tr. 17, 87, 95-101).

Plaintiff applied for benefits on October 1, 2003, alleging that he had been disabled since April 1, 2002, due to back pain. (Tr. 62-64, 86). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 28-61). On June 15, 2005, Plaintiff appeared before ALJ James Prothro, with testimony being offered by Plaintiff and vocational expert, Randall Nelson. (Tr. 258-96). In a written decision dated November 3, 2005, the ALJ determined that Plaintiff was not disabled. (Tr. 16-26). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 3-5). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## MEDICAL HISTORY

X-rays of Plaintiff's lumbar spine, taken on April 22, 2003, revealed "normal" alignment and "mild" disc space narrowing at L5-S1. (Tr. 211). On June 4, 2003, Plaintiff

3

participated in an MRI examination of his lumbar spine the results of which revealed "moderate" disc herniations at L4-5 and L5-S1 and "mild" disc bulging at L3-4. (Tr. 210).

On July 15, 2003, Plaintiff was examined by Dr. Richard Ball. (Tr. 214-17). Plaintiff reported that he was experiencing pain in his low back and lower extremities with intermittent numbness. (Tr. 216). When asked about the onset of his pain, Plaintiff was "somewhat vague" and provided contradictory answers. In this respect, the doctor noted that "the quality of the history obtained is impaired somewhat secondary to consistently vague/non-specific answers." On examination Plaintiff exhibited "multiple inconsistencies" as well as "moderate to marked theatrical pain behavior." Dr. Ball further observed that "on several occasions" Plaintiff exhibited "great apparent difficulty performing simple tasks when these are formally tested," but later performed the same maneuvers "with ease" when he did not realize that he was being observed. *Id.*

Plaintiff also participated in electrodiagnostic testing, the results of which were "normal" with no evidence of radiculopathy, neuropathy, or polyneuropathy. (Tr. 214). The doctor concluded that Plaintiff required only "conservative" treatment and should "increase his general activity level." (Tr. 215). The doctor further observed that Plaintiff's "prognosis for returning to full functionality is good" and there was no evidence "that would suggest a significant probability of long-term disability." *Id.*

On January 12, 2004, Plaintiff was examined by Dr. Richard Burke. (Tr. 131-33). Plaintiff reported that he was experiencing "some" radicular pain, but that his "main complaint" was low back pain, which he rated as 6 on a scale of 1-10. (Tr. 129, 131). On examination, Plaintiff exhibited "significant pain behaviors." (Tr. 131-32). He exhibited "minimal" back motion and "profound tenderness" over his sacroiliac joints. (Tr. 132). Straight leg raising produced "increased"

4

low back pain. The doctor diagnosed Plaintiff with disk herniations at L4-5 and L5-S1 and "severe" low back pain of "unclear cause." *Id.* Plaintiff was also examined by Vincent Cornellier, Ph.D. (Tr. 129-30). Plaintiff reported that he was "somewhat bored," but was not experiencing a lot of stress. *Id.* The doctor concluded that Plaintiff was experiencing "mild reactive-type depression" resulting from the recent death of his mother. (Tr. 130).

On February 9, 2004, Dr. Arthur Dundon completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 143-56). Determining that Plaintiff suffered from reactive depression, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.04 (Affective Disorders) of the Listing of Impairments. (Tr. 144-52). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for this particular impairment. (Tr. 153). Specifically, the doctor concluded that Plaintiff suffered mild restrictions in the activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and had never experienced an episode of decompensation. *Id.*

On February 13, 2004, Plaintiff received an epidural steroid injection at L4-5. (Tr. 162). Plaintiff received another such injection on March 4, 2004. (Tr. 167-68).

On March 25, 2004, Plaintiff was examined by Dr. A. Michael Derosayro. (Tr. 166). Plaintiff reported that he had received "really no benefit" from his two epidural steroid injections. The doctor concluded that given Plaintiff's "minimal radicular features. . .further neural blockage is not warranted." *Id.*

On September 17, 2004, Plaintiff was examined by Dr. Joel Anhalt. (Tr. 225-26). Plaintiff reported that he was experiencing back pain which he rated as 5-6 (on a scale of 1-10). (Tr. 225). Plaintiff exhibited limited range of back movement, but no evidence of tenderness or

5

deformity. *Id.* Plaintiff was instructed to use ice for pain relief and perform back exercises twice daily. (Tr. 226). The doctor also recommended that Plaintiff "be placed on disability due to his underlying condition." (Tr. 230).

On December 15, 2004, Plaintiff was examined by Dr. Anhalt. (Tr. 239-40). Plaintiff reported that he was experiencing back pain which he rated as 12 (on a scale of 1-10). (Tr. 239). The doctor instructed Plaintiff to "begin an exercise program" in which at least 4 times weekly he exercises for 45-60 minutes performing activities such as "walking, running, swimming, cross-country skiing, or any other exercise or activity which provides adequate cardiac output." *Id.*

On March 4, 2005, Dr. Anhalt completed a questionnaire regarding Plaintiff's residual functional capacity. (Tr. 231-35). The doctor reported that Plaintiff can sit for two hours and stand for 30 minutes at one time. (Tr. 233). He reported that during an 8-hour workday Plaintiff can sit "about 4 hours" and can stand/walk for "less than 2 hours." Dr. Anhalt noted that Plaintiff required a sit-stand option. *Id.* The doctor also reported that Plaintiff can occasionally lift less than 10 pounds, but can "never" lift 10 pounds. (Tr. 234).

At the administrative hearing, Plaintiff testified that he can only stand for 60 minutes, sit for 15 minutes, and walk about one and one-half blocks. (Tr. 274-75). Plaintiff also testified, however, that he exercises daily by walking for 45-60 minutes. (Tr. 270-71). He reported that he "could probably lift about 10 pounds." (Tr. 275). Plaintiff also testified that he "sometimes" goes fishing. (Tr. 271).

**ANALYSIS OF THE ALJ'S DECISION**

A. <u>Applicable Standards</u>

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

B. <u>The ALJ's Decision</u>

The ALJ determined that Plaintiff suffered from the following severe impairments: (1) degenerative disc disease; (2) morbid obesity; and (3) eczema. (Tr. 22). The ALJ further determined, however, that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* The ALJ concluded that while Plaintiff was unable

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

to perform his past relevant work, there existed a significant number of jobs which he could perform despite his limitations. (Tr. 22-25). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1. The ALJ's Decision is Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work activities subject to the following restrictions: (1) he can occasionally lift and carry 10 pounds; (2) he can frequently lift and carry "slightly less than 10 pounds;" (3) he can stand and/or walk 2 hours during an 8-hour workday; (4) he can sit for 6 hours during an 8-hour workday; (5) he requires a sit-stand option; (6) he cannot perform constant or repetitive pushing or pulling activities; (7) he can only occasionally balance, stoop, kneel, crouch,

crawl, or climb ramps/stairs; and (8) he cannot climb ladders, ropes, or scaffolds. (Tr. 23). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff was unable to perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964.

While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Randall Nelson.

The vocational expert testified that there existed approximately 7,200 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 288-90). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold).

a.   The ALJ Properly Evaluated the Medical Evidence

As noted above, Dr. Anhalt completed a questionnaire regarding Plaintiff's residual functional capacity on March 4, 2005. (Tr. 231-35). The doctor reported that Plaintiff can sit for two hours and stand for 30 minutes at one time. (Tr. 233). Dr. Anhalt reported that during an 8-hour workday Plaintiff can sit "about 4 hours" and can stand/walk for "less than 2 hours." The doctor also reported that Plaintiff can occasionally lift less than 10 pounds, but can "never" lift 10 pounds and, furthermore, required a sit-stand option. (Tr. 233-34). Dr. Anhalt further opined, following a September 17, 2004 examination, that Plaintiff should "be placed on disability due to his underlying condition." (Tr. 230). Plaintiff asserts that because Dr. Anhalt was his treating physician, the ALJ was obligated to accord controlling weight to his opinions.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Accordingly, the medical opinions and diagnoses of treating physicians are given substantial deference, and if such opinions and diagnoses are uncontradicted, complete deference is appropriate. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ is not bound by conclusory statements, particularly when unsupported by detailed objective criteria and documentation. *See Cohen*, 964 F.2d at 528. The ALJ need not defer to an opinion contradicted by substantial medical evidence. *See Cutlip v. Sec'y of*

*Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994). Finally, when according less than controlling weight to the opinion of a treating physician, the ALJ must specifically articulate her rationale for doing so. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544-45 (6th Cir. 2004).

The ALJ discounted the opinions expressed by Dr. Anhalt. In this respect, the ALJ correctly stated as follows:

> Dr. Anhalt, who saw the claimant for about 6 months (initially for a skin rash and later to establish care and to address his chronic low back pain) recommended that the claimant be placed on disability on his first visit dealing with the back pain. Dr. Anhalt apparently did not consider referral to an orthopedist, a pain clinic, a neurologist, or any other treatment or non-traditional pain treatment such as modified back therapy, aqua therapy or acupuncture. The undersigned notes that Dr. Anhalt is not a back specialist or a pain specialist and that he relied totally on statements from the claimant regarding his pain. Little weight is being placed on the assessment by Dr. Anhalt who found the claimant incapable of even sedentary exertion.

(Tr. 23).

As the ALJ also recognized, the objective medical evidence simply does not support Dr. Anhalt's opinions. The results of various objective examinations, including x-rays, MRIs, and electrodiagnostic testing, do not support Dr. Anhalt's conclusions.

Dr. Anhalt's opinions are also internally inconsistent. On September 17, 2004, Dr. Anhalt concluded that Plaintiff was disabled. On December 15, 2004, however, the doctor instructed Plaintiff to begin "walking, running, swimming, cross-country skiing, or [perform] any other exercise or activity which provides adequate cardiac output." Less than three months later, however, on March 4, 2005, the doctor concluded that Plaintiff could stand for only 30 minutes. Finally, as the ALJ correctly recognized, the record contains evidence that Plaintiff has exaggerated his

symptoms and the pain and limitation resulting therefrom. In sum, there exists substantial evidence to support the ALJ's decision to accord less than controlling weight to Dr. Anhalt's opinion.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


Date: April 10, 2007                                   /s/ Ellen S. Carmody             
                                                      ELLEN S. CARMODY
                                                      United States Magistrate Judge